Michael Millen
Attorney at Law (#151731)
119 Calle Marguerita Ste. 100
Los Gatos, CA 95032
Telephone: (408) 871-2777
Fax: (408) 516-9861
mikemillen@aol.com

Catherine Short, Esq. (#117442)
Life Legal Defense Foundation
PO Box 1313
Ojai, CA 93024
(707) 337-6880
kshort@lldf.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (San Jose Division)

TERESITA AUBIN, DAVID BROWNFIELD, and WYNETTE SILLS,

Plaintiffs,

v.

ROB BONTA, in his capacity as Attorney General of the State of California,

Defendant.

NO.: 21-CV-7938

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

## INTRODUCTION

"Never allow a good crisis go to waste. It's an opportunity to do the things you once thought were impossible." So spoke a politician in 2008, and so acted the California Legislature in 2021. Using the threat of COVID as an excuse, the Legislature enacted a breathtaking restriction on speech that will ban core First Amendment activity in numerous locations across California.

On or about October 8, 2021, California enacted Senate Bill 742 ("SB 742") , creating Penal Code §594.39 ("Statute"). The Statute imposes various restrictions on First Amendment activity within 100 feet of the entrance to any "vaccination site," which is defined to include any space or site where vaccines are provided, including hospitals, physician's offices, clinics, and any retail space or pop-up location. While parts of the law restrict activity that is already illegal anywhere, such as obstructing movement and threatening people, the heart of the law is a restriction on approaching within 30 feet of another person for the purpose of engaging in various forms of traditional sidewalk free speech.

In 2000, the United States Supreme Court upheld a law imposing a similar restriction on approaching within **8 feet** of other person in certain public locations, but size matters. SB742 is an unconstitutional restriction on free speech.

"Even if the Constitution has taken a holiday during this pandemic, it cannot become a sabbatical." *Roman Catholic Diocese v. Cuomo*, 592 U.S.___ , 141 S.Ct. 63, 70 (2020). In enacting SB 742, California plans to put the Constitution's Free Speech guarantees on an indefinite leave of absence. This Court should grant the temporary restraining order and application for order to show cause.

## FACTS

On or about September 8, 2021, the Legislature passed Senate Bill 742, creating Penal Code §594.39. On October 8, 2021, the Governor signed the bill. Because the bill was passed as an "urgency statute" that is "necessary for the immediate preservation of the public peace, health or

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

safety," it took effect immediate upon signing. *See* Request for Judicial Notice, Exhibit A (text of Senate Bill 742) and Exhibit B (legislative procedural history of Senate Bill 742).

The Statute prohibits approaching withing 30 feet of any person, while that person is within 100 feet of the entrance or exit of a "vaccination site" (that is any location where vaccination services are provided), for numerous purposes which are already unlawful. However, the Statute also prohibits such approaches for the purpose of "harassing," the definition of which includes a swath of constitutionally protected activity: "knowingly approaching, without consent, within 30 feet of another person or occupied vehicle for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with, that other person in a public way or on a sidewalk area." §549.39(a) and (c)(1).

Plaintiffs are individuals who regularly exercise their free speech rights on sidewalks and public thoroughfares in front of businesses where vaccines are provided. Declaration of Teresita Aubin ("Aubin Dec."), ¶2-3; Declaration of David Brownfield ("Brownfield Dec."), ¶2-3; Declaration of Wynette Sills ("Sills Dec."), ¶ 2-3. These plaintiffs seek to approach persons seeking entry into these "vaccination site" clinics to speak with them, display signs, and/or to hand them some literature, but they are now chilled from doing so because of the threat of the Statute. Aubin Dec., ¶ 4-5; Brownfield Dec., ¶4-5; Sills Dec., ¶4-6.

**ARGUMENT**

To be granted a preliminary injunction, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 20 (2008). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

The plaintiffs' claims herein easily establish the elements shifting the burden to Defendant Bonta to justify the restriction.

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

**A. Penal Code §594.39 is an unconstitutional restriction on speech in a public forum.**

Public sidewalks are traditional public fora, which for "'time out of mind' . . . have been used for public assembly and debate." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). The identification of public sidewalks with public fora is not merely the "accidental invocation of a 'cliche.'" *Id*. Rather, the Supreme Court has explicitly held that all sidewalks are public fora: "No particularized inquiry into the precise nature of a specific street is necessary; all public streets are held in the public trust and are properly considered traditional public fora." *Id*. at 481.

Governmental bodies may regulate the time, place and manner of speech in traditional public fora, but only if such regulations "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Again, the government bears the burden of proving that the "narrowly tailored" and "alternative communication" prongs are satisfied. *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1227 (9th Cir. 1990).

A content-based exclusion may only be enforced if it serves a compelling government interest and is narrowly drawn to achieve that end. *Perry*, 460 U.S. at 45.

<u>1. The Statute is not content-neutral.</u>

Section 594.39(d) expressly exempts "lawful picketing arising out of a labor dispute, as provided in Section 527.3 of the Code of Civil Procedure." Laws that exempt labor picketing are content-based restrictions on speech. *Carey v. Brown*, 447 U.S. 455, 471 (1980) (striking down residential picketing ordinance containing an exception for labor picketing); *Police Department of Chicago v. Mosely*, 408 U.S. 92, 100-102 (1972) (striking down ordinance banning picketing of schools, with an exception for labor picketing). Thus, the Statute must be

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

enjoined unless it serves a compelling governmental interest and is narrowly drawn to serve that interest.

The Finding and Declarations section of SB742 states that the State has an "overwhelming and compelling interest in ensuring its residents can obtain and access vaccinations." Section 1(a)(9). First, there is no authority that this interest, particularly broadly worded as it is, is a compelling government interest.

Second, even if the State's interest in people receiving vaccines were a compelling interest, the Statute is not narrowly drawn to achieve that interest. The Statute bans approaches of **any person** seeking entry for **any reason** to **any location** where **any vaccine** is provided. Creating speech-free zones around every drug store, stand-alone health clinic, and supermarket in the state in order to re-assure the occasional customer seeking a vaccine of some kind is hardly a narrowly drawn restriction on speech. On the contrary, it is unconstitutionally overinclusive and overbroad. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 804 (2011) (striking down ban on violent video games as both underinclusive and overinclusive: "While some of the legislation's effect may indeed be in support of what some parents of the restricted children actually want, its entire effect is only in support of what the State thinks parents *ought* to want." (emphasis in original)).

Third, nothing in the Findings and Declarations suggest why labor picketers are less likely to spread COVID or other airborne diseases to persons outside vaccination sites than are picketers on other topics. Thus, even if the purported state interest were a compelling one, the restriction would be fatally underinclusive. *Brown, supra*, at 802 ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint").

The Statute is also content-based and underinclusive because of its banning **only** those approaches made for the purposes of "oral protest, education, or counseling," as opposed approaching for any other reason, such as asking directions or panhandling. No compelling governmental interest supports this distinction. *Reed v. Town of Gilbert* (2015) 576 U.S. 155, 172

(2015) ("The Town has offered no reason to believe that directional signs pose a greater threat to safety than do ideological or political signs.")

Plaintiffs are likely to succeed on the merits of showing that §594.39 is an unconstitutional content-based restriction on speech.

2. The Statute is not narrowly tailored does nor does it leave open ample alternative channels of communication.

The language of §594.39(c)(1) comes virtually verbatim from a Colorado statute upheld by the Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000), with the significant exception that the Colorado statute only prohibited unconsented approaches within **eight** feet. Considering a facial challenge to the Colorado law, the Supreme Court found that the restriction was narrowly tailored and left open ample alternative channels of communication. It did so by emphasizing the small size and minimal impact of the 8-foot no-approach zone:

> The three types of communication regulated by § 18-9-122(3) are the display of signs, leafletting, and oral speech. The 8-foot separation between the speaker and the audience should not have any adverse impact on the readers' ability to read signs displayed by demonstrators
>
> ….
>
> With respect to oral statements, the distance certainly can make it more difficult for a speaker to be heard, particularly if the level of background noise is high and other speakers are competing for the pedestrian's attention. . . . More significantly, this statute does not suffer from the failings that compelled us to reject the "floating buffer zone" in *Schenck [v. Pro-Choice Network of New York*], 519 U.S. 357 (1997)]. **Unlike the 15-foot zone in *Schenck*, this 8-foot zone allows the speaker to communicate at a "normal conversational distance."**
>
> ….
>
> > [33] Nothing in this statute, however, prevents persons from proffering their literature; they simply cannot approach within eight feet of an unwilling recipient.
>
> ….
>
> As we explained above, the 8-foot restriction on an unwanted physical approach leaves ample room to communicate a message through speech. **Signs, pictures, and voice itself can cross an 8-foot gap with ease**. . . .
>
> [State] enact[ed] an **exceedingly modest restriction** on the speaker's ability to approach.

*Id*. at 726-729 & n. 33 (emphasis added).

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

The Court also emphasized that these speech activities were only impeded where the intended recipient of the leaflet had not consented to the approach. *See, e.g.*, *id*. at 715-16, 729. However, as opposed to an 8-foot space, a 30-foot gap effectively precludes obtaining consent to approach at all and becomes a complete ban on approaching and therefore on leafleting and oral protest, education, counseling.

As a demonstrative exercise, substituting "30 foot" for "8 foot" throughout the *Hill* decision demonstrates how the greatly increased distance forecloses open ample alternative channels of communication and essentially negates the Supreme Court's teaching and reasoning that upheld the Colorado statute, e.g.:

- "[T]his [30-foot] zone allows the speaker to communicate at a 'normal conversational distance.'" (*Id.* at 705)
- "The [30-foot] separation between the speaker and the audience should not have any adverse impact on the readers' ability to read signs displayed by demonstrators." (*Id.* at 704)
- "The [30-foot] restriction on an unwanted physical approach leaves ample room to communicate a message through speech." (*Id.* at 729)
- "Signs, pictures, and voice itself can cross an [30-foot] gap with ease." (*Id.* at 729)
- "Nothing in this statute, however, prevents persons from proffering their literature, they simply cannot approach within [thirty] feet of an unwilling recipient." (*Id.* at 727)

None of these revised statements make sense due to the widely differing effect of a 30 foot buffer zone versus a mere 8 foot zone and highlight why the *Hill* court would not approve of SB 742.

More recently than *Hill*, the Supreme Court struck down a Massachusetts law creating 35-foot speech-free buffer zones around the entrances to abortion clinics. *McCullen v. Coakley*, 573 U.S. 464 (2014). The Court held that the law was not narrowly tailored and infringed on a core First Amendment activities of one-on-one conversation and leafleting: "It is thus no answer to say that petitioners can still be 'seen and heard' by women within the buffer zones.[] If all that women

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

can see and hear are vociferous opponents of abortion, then the buffer zones have effectively stifled petitioners' message." *Id.* at 489-90.

The Court also noted that Massachusetts had failed to explain why its interests could not be protected and furthered by less drastic restrictions on speech, including simply enforcing existing criminal laws against "assault, breach of the peace, trespass, vandalism, and the like." *Id.* at 492. Repeat offenders could be enjoined in civil actions. *Id*. "The point is [] that the Commonwealth has available to it a variety of approaches that appear capable of serving its interests, without excluding individuals from areas historically open for speech and debate." *Id*. at 493-94.[1]

The Court also found the Commonwealth's record of prior disruptive conduct purportedly justifying the buffer zones to be woefully deficient, as was the Commonwealth's record of having tried, without success, other means of addressing the problems that threatened its interests. "To meet the requirement of narrow tailoring, **the government must demonstrate** that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *Id*. at 495 (emphasis added).

The Findings and Declarations of SB742 contain only one sentence setting out the perceived need for this law: "Protestors at vaccination sites continue to impede delay Californians' ability to access vaccination sites." Section 1(a)(12). To establish that the Statute is narrowly tailored, Defendant Bonta will not only have to show that this problem has been substantial, that it continues, and that the government has tried other means of addressing the problem, without success.

The Court found the Massachusetts law unconstitutional because it "burden[ed] substantially more speech than necessary to achieve the Commonwealth's asserted interests." *Id*. at

[1] At the outset of its discussion of narrow tailoring, the Court noted that the buffer zone law was "truly exceptional." The parties "identify no other State" with a similar speech-restrictive law. The unique nature of the law raised "concern that the Commonwealth has too readily forgone options that could serve its interests just as well, without substantially burdening the kind of speech in which petitioners wish to engage." *Id.* Plaintiffs here are unaware of any state or local law in the United States restricting speech specifically in the vicinity of vaccination sites.

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

490. *See also Ward v. Rock against Racism*, 491 U.S. 781, 798 (1989) (government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals."). The Statute at issue here also burdens substantially more speech than necessary to achieve the asserted interest of "blunt[ing] and stop[ping] infectious diseases" by ensuring "access" for residents to obtain vaccinations. Section 1(a)(9).

Plaintiffs are likely to prevail on the merits of their claims that the Statute is an unconstitutional restriction on speech in a public forum, because it is not narrowly tailored and does not leave open ample alterative channels of communication.

## II. The Elements of Irreparable Harm, Balancing of Equities, and Public Interest All Favor Granting A Temporary Restraining Order And Preliminary Injunction Against Enforcement Of The Statute

SB 742 strikes at the heart of First Amendment freedoms, and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). A "colorable First Amendment claim" is "irreparable injury sufficient to merit the grant of relief," *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (internal quotation marks omitted). As the Ninth Circuit noted in *Jacobsen v. United States Postal Serv*., 812 F.2d 1151, 1154 (9th Cir. 1987), "Where the precious First Amendment right of freedom of the press is at issue, the prevention of access to a public forum is, each day, an irreparable injury: the ephemeral opportunity to present one's paper to an interested audience is lost and the next day's opportunity is different." This holding should apply with equal force to speaking to persons on the public sidewalk and leafletting, which also present only an "ephemeral" opportunity to present a message to a particular audience at a particular time. The fact that the law at issue merely restricts, rather than eliminates, access to the audience is a distinction which the Ninth Circuit has declared "artificial." *Baldwin v. Redwood City*, 540 F.2d 1360, 1370, n. 28 (1976).

As to the balance of equities, this "urgency" legislation languished in the Legislature for seven months before finally being passed in the final hours of the legislative session. Another month passed before the Governor signed it. It addresses a problem that, if it ever existed, exists

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

no more. Enforcement or threatened enforcement of the Statute, however, has an immediate chilling effect on core First Amendment activities, as well as unfairly discriminating against disfavored speech.

Where a plaintiff makes a showing of probable success on the merits in a First Amendment challenge, the public interest factor is easily met. The Ninth Circuit has "consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014).

### III. THE COURT SHOULD WAIVE BOND

If the court enters a preliminary injunction, the court is asked to waive bond under F.R.Civ.P. Rule 65(c) as this Circuit has signaled its approval of nominal bond or waiver of bond requirements where a sole plaintiff seeks to enforce rights in matters of public interest. *See, e.g., Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (approving $1,000 bond and noting with approval a Second Circuit decision which waived bond). Plaintiffs are seeking to enforce core First Amendment rights which most certainly are matter of public interest and which inure to the benefit of the entire public.

In addition, the Attorney General will incur no additional expenses if he refrains from enforcing the statute. By definition, when the government ceases to enforce a criminal statute, it saves the cost of the police and prosecutorial resources involved. Given that there is no economic risk to the Attorney General by being enjoined, the Court is asked to waive bond as allowed by *Barahona-Gomez*. *See also Behymer-Smith v. Coral Acad. of Sci.*, 427 F. Supp. 2d 969, 974 (2006) (district court orders nominal $100 bond in First Amendment case because evidence shows that defendant will suffer little, if any damage, by issuance of injunction).

## CONCLUSION

The court should enter the temporary restraining order and preliminary injunction as requested.

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

Dated: October 10, 2021

MICHAEL MILLEN, ESQ.
ATTORNEY FOR PLAINTIFF

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777