UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESITA AUBIN, DAVID BROWNFIELD, and WYNETTE SILLS,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California,<br><br>Defendant. | Case No. 21-cv-07938-NC<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Re: ECF 3 |

Plaintiffs Teresita Aubin, David Brownfield, and Wynette Sills move for a Temporary Restraining Order enjoining the enforcement of California Senate Bill 742, a California urgency statute that became effective October 8, 2021, and is codified in California Penal Code § 594.39.  Plaintiffs argue that the new statute violates their free speech rights under the First Amendment to the United States Constitution by creating a broad buffer zone around all sites in California where vaccines are administered.  Because the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, and the balance of equities and public interest weighs in their favor, the Court GRANTS Plaintiffs' motion for a Temporary Restraining Order.  And because the Court concludes that the prohibition on

approaching with the purpose of harassing is not functionally severable from the remainder of SB 742, the statute must be enjoined in its entirety.

## I. BACKGROUND

Vaccines have been an essential tool in stemming the spread and severity of the COVID-19 virus.  The development and distribution of those vaccines has also evoked public controversy, leading to some documented attempts of activists impeding public access to vaccination sites.  ECF 12-1, Ex. 6.

In response, the California Legislature enacted Senate Bill 742 creating Cal. Penal Code § 594.39.  The statute makes it unlawful to "knowingly approach within 30 feet of any person while a person is within 100 feet of the entrance or exit of a vaccination site and is seeking to enter or exit a vaccination site, or any occupied motor vehicle seeking entry or exit to a vaccination site, for the purpose of obstructing, injuring, harassing, intimidating, or interfering with that person or vehicle occupant." The statute further states that "[i]t is not a violation of this section to engage in lawful picketing arising out of a labor dispute, as provided in Section 527.3 of the Code of Civil Procedure."  A violation of the statute is "punishable by a fine not exceeding one thousand dollars ($1,000), imprisonment in a county jail not exceeding six months, or by both that fine and imprisonment."  Cal. Penal Code § 594.39(a).  SB 742 also includes a severability clause if a particular section is found to be unconstitutional.  Cal. Penal Code § 594.39(e).

The statute also includes several definitions.  A "vaccination site" is a "physical location where vaccination services are provided, including, but not limited to, a hospital, physician's office, clinic, or any retail space or pop-up location made available for vaccination services." Cal. Penal Code §594.39(c)(6).  "Harassing" means "knowingly approaching, without consent, within 30 feet of another person or occupied vehicle for the purpose of passing a leaflet or handbill to, displaying a sign to, or engaging in oral protest, education, or counseling with, that other person in a public way or on a sidewalk area." Cal. Penal Code § 594.39(c)(1).  "Interfering with" means "restricting a person's freedom of movement."  Cal. Penal Code § 594.39(c)(2).  "Intimidating" means "making a true

threat directed to a person or group of persons with the intent of placing that person or group of persons in fear of bodily harm or death." Cal. Penal Code § 594.39(c)(3). "Obstructing" means "rendering ingress to or egress from a vaccination site, or rendering passage to or from a vaccination site, unreasonably difficult or hazardous." Cal. Penal Code § 594.39(c)(4).

When drafting SB 742, the lawmakers made several statutory findings about the public health circumstances giving rise to SB 742. 2021 Cal. Legis. Serv. Ch. 737 (West). including:

> (1) On March 4, 2020, Governor Gavin Newsom declared a state of emergency in California due to the threat posed by the novel coronavirus (COVID-19) pandemic.
>
> (2) The COVID-19 pandemic has resulted in the tragic death of over 640,000 Americans, including over 65,000 Californians.
>
> (3) COVID-19 is increasingly infecting Californians' children and preventing them from learning and attending school.
>
> (4) The federal Centers for Disease Control and Prevention (CDC) stated that one of the principal ways that SARS-COV-2, the virus that causes COVID-19, is spread is through inhalation of very fine respiratory droplets and aerosol particles.
>
> (5) Preeminent virologists, epidemiologists, and medical journals have all recognized that SARS-COV-2 can spread through aerosol transmission over multiple feet.
>
> (6) The CDC recently told the public that the Delta COVID-19 variant, B.1.617.2, AY.1, AY.2, AY.3, is one of the most infectious and easily transmitted respiratory viruses ever.
>
> (7) Preeminent virologists, epidemiologists, and medical journals have also recognized that other infectious diseases, including measles, chickenpox, and tuberculosis, all spread through airborne transmission.
>
> (8) Future unknown infectious diseases also likely will spread through airborne transmission.
>
> (9) To blunt and stop infectious diseases, the State of California has an overwhelming and compelling interest in ensuring its residents can obtain and access vaccinations.
>
> (10) The United States Supreme Court previously upheld a buffer zone protecting patients right to access healthcare services.

3

>(11) Given the distance across which airborne infectious diseases spread, a 30-foot buffer zone is necessary to protect the health of Californians trying to access vaccination sites.
>
>(12) Protestors at vaccination sites continue to impede and delay Californians' ability to access vaccination sites.
>
>(b) Therefore, it is the intent of the Legislature to protect Californians from infectious diseases by safeguarding their right to access vaccination sites and ensuring that Californians can lawfully protest
>
>*Id.* at § 1(a).

On October 30, 2021, U.S. District Court Judge Dale A. Drozd in the Eastern District of California heard a related challenge to SB 742 and granted a plaintiff's motion for a temporary restraining order in part, enjoining the harassment section of the statute. *Right to Life of Central California v. Bonta*, No. 21-cv-01512-DAD-SAB, 2021 WL 5040426 (E.D. Cal. Oct. 30, 2021). As explained below, this Court agrees with Judge Drozd's merits analysis but differs somewhat as to severability and the appropriate scope of the order.

Plaintiffs Teresita Aubin, David Brownfield, and Wynette Sills are activists who routinely engage in activities including handing out pamphlets, holding signs and engaging in sidewalk conversations near vaccination sites, but do not wish to be arrested for doing so. ECF 12-3, 12-4, 12-5 (Declarations of Plaintiffs). Following passage of SB 742, Plaintiffs filed suit against California Attorney General Rob Bonta in his official capacity alleging that the statute violated their free speech rights under the United States and California Constitutions. ECF 1 at 2. Shortly thereafter, Plaintiffs moved for a Temporary Restraining Order, seeking to enjoin SB 742 in its entirety. All parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).

## II.  LEGAL STANDARD

The standard to obtain a temporary restraining order is similar to that for a preliminary injunction. *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To be granted a preliminary injunction, the moving party "must

establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

Even without a showing of likelihood of success on the merits, the Ninth Circuit has allowed plaintiffs to meet the standard for a Temporary Restraining Order by demonstrating that their clam raise a "serious questions going to the merits" and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-1135 (9th Cir. 2011) (internal citation omitted).

Because the Court concludes that Plaintiffs have demonstrated a likelihood of success on the merits, it applies the test from *Winter*.

### III.  DISCUSSION

####   A.  Plaintiffs Have Demonstrated A Likelihood of Success On The Merits

The Court concludes that Plaintiffs have showed a likelihood of success on the merits of their First Amendment Claim. First, SB 742 is not content-neutral because it creates an exception to otherwise proscribed activity for labor picketers and the legislative history shows that the speech that the drafters were concerned about was specifically anti-vaccine language. Although the state undoubtedly has compelling state interests in preventing the spread of COVID-19 and ensuring access to vaccines, the statute is not narrowly tailored to achieve those objectives.

#####     1.  SB 742 Is Not Content-Neutral

A threshold inquiry is whether the SB 742 is content-neutral. *Perry Education Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Plaintiffs argue that the Statute is not content-neutral because it contains an exemption for "lawful picketing

arising out of a labor dispute . . . ." Section 594.3(d). And "[l]aws that exempt labor picketing are content-based restrictions on speech." *Carey v. Brown*, 447 U.S. 455, 471 (1980).

The State responds that section is a clarification rather than an exception or exemption because picketing itself does not run afoul of the statute so long as the picketers do not approach people with the prohibited intents. By contrast, in *Carey*, the challenged statute banned all picketing in front of residences or dwellings, except for labor picketing. *Id.* at 457; ECF 12 at 11-12. The Court concludes that the statute is not content-neutral as it permits labor picketers to engage in activity that would be illegal if conducted by other parties.

Additionally, even to the extent that SB 742 is facially neutral, there is no doubt that this legislation was adopted in part because of concern about anti-vaccine speech specifically. Such legislative concerns cut against a conclusion that a facially neutral statute is truly content-neutral. *See, e.g.*, *Nat'l Rifle Ass'n v. City of Los Angeles*, 441 F. Supp. 3d 915, 930-31 (C.D. Cal. 2019) ("though facially content-neutral, will be considered content-based regulations of speech: laws that cannot be justified without reference to the content- of the regulated speech, or that were adopted by the government because of disagreement with the message the speech conveys . . .") (internal citations and quotation marks omitted). Legislative findings indicate that SB 742 was adopted, in part, because of disagreement with anti-vaccine protesters. 2021 Cal. Legis. Serv. Ch. 737 (West) § 1(a)(12).

Because the challenged restrictions are not "neutral" and of "general applicability," they must satisfy "strict scrutiny," and this means that they must be "narrowly tailored" to serve a "compelling" state interest. *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993). The Court concludes that, although the state clearly has compelling state interests in stemming the spread of COVID-19 and ensuring access to vaccines, SB 742 is not narrowly tailored to achieve those objectives.

### 2. Preventing the Spread of COVID-19 and Ensuring Access to Vaccinations Are Compelling State Interests

The Court concludes that ensuring access to vaccines is a compelling state interest. Plaintiffs do not offer the Court any reason to believe otherwise. As the United States Supreme Court has recognized, "[s]temming the tide of COVID-19 is unquestionably a compelling state interest." *Roman Catholic Dioceses of Brooklyn v. Cuomo*, 529 U.S. __ (2020). Given that vaccines are a critical tool in the fight against COVID-19, ensuring safe access to vaccines for those who wish to have one is also a compelling state interest.

### 3. SB 742 Is Not Narrowly Tailored

This statute, broader than exists anywhere in the country, is not narrowly tailored to achieve the compelling state interests in stopping the spread of COVID-19 or of ensuring access to vaccines. In fact, Defendant does not dispute that SB 742 would not survive strict scrutiny, arguing instead that it survives *intermediate* scrutiny as a content-neutral time, place, and manner restriction. ECF 12 at 7. The statute is not narrowly tailored based on the size of the buffer zone, the locations at which speech is limited, and the range of people with whom Plaintiffs are barred from communicating.

Plaintiffs note, and the Court agrees, that SB 742 differs from the statute upheld by the Supreme Court in *Hill v. Colorado*, 530 U.S. 703 (2000). Although the language of that statute is nearly identical to the one at issue in *Hill*, the statute there only prohibited unconsented approaches of eight feet. *Id.* at 719. In upholding the statute, the Supreme Court emphasized the relative modesty of the zone, and the fact that both speech and pictures could be easily conveyed over the eight feet, leaving open ample "alternative channels of communication." *Id.* at 726-29.

The same is not true here. SB 742 is not narrowly tailored with respect to the amount of space in which speech is limited. In its argument at the hearing, the state argued that the dispositive question is not so much the size of the buffer zone, but the amount of speech limited. It then argued that that a 30-foot buffer zone would not encompass that much more speech than an eight-foot buffer zone in *Hill*. As a matter of common sense, it

7

is difficult to imagine how this could be so when, as the Plaintiffs point out, it would be nearly impossible to have any sort of conversation or exchange with a 30-foot buffer zone. ECF 3-1 at 5-6.

SB 742 is also not narrowly tailored with respect to locations affected. Different than the circumstances in *Hill*, COVID-19 vaccines are given out in multiple locations in a community, not just at a particular type of medical clinic. Because the purpose is to make them readily accessible vaccines are given out in retail establishments, community centers, and other locations with the result that any restriction on speech imposed by SB 742 would not be limited to a narrow set of locations.

Finally, the statute is not narrowly tailored with respect to the people that it shields from speech. Although the state repeatedly refers to "patients" in its analysis, SB 742 applies to interactions with anyone who is entering a vaccination cite, whether they intend to get a vaccine or not. *See, e.g.*, ECF 12 at 10-12.

The state suggests in reply that SB 742 does not bar protesters from *being* in the protest zone, as long as they do not *approach* people with the proscribed intents. ECF 12 at 16 ("Plaintiffs are free to remain in one place near a vaccination site—even when a patient passes within 30 feet of them—and offer pamphlets or literature, ask those entering or exiting to speak with them, or hold signs—so long, of course, as they do not obstruct or impair the ability of patients to enter or exit the site when doing so" even quite close to the entry of sites).

The logistics of this are difficult to work through, given that the statutory definition of harassment includes many standard protest activities. How is a protester supposed to get in the zone while approaching no one? How is a local official attempting to enforce this law consistent with the First Amendment to know whether protest activities are permissible? The state could achieve the same purpose simply by enforcing existing laws against intimidation, *see, e.g.*, Cal. Penal Code § 422 (Criminal Threats), or obstruction of movement. *See, e.g.*, Cal. Penal Code § 602.1 (Interfering Or Obstructing A Public Business Establishment).

Because SB 742 is not narrowly tailored to achieve a compelling state interest, the Court concludes that Plaintiffs have met their burden to show a likelihood of success on the merits of their First Amendment claim.

B. <u>Plaintiffs Will Suffer Irreparable Harm In The Absence Of Relief</u>

Having concluded that Plaintiffs have shown a likelihood of success on the merits, the Court further concludes that Plaintiffs will suffer irreparable harm in the absence of relief. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Defendant does not dispute that the deprivation of a constitutional right is an irreparable harm, only that SB 742 is not unconstitutional. ECF 12 at 18. Instead, it focuses on the harm resulting from COVID-19 and the public interest in responding to it, which will be addressed below. *Id.*

C. <u>Public Interest/Balance Of The Equities</u>

Next the Court assesses the public interest and balances the equities involved. When the government is a party, those two inquiries merge. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

Here, there are significant public interests on both sides. Plaintiffs note that "[w]here a plaintiff makes a showing of probable success on the merits in a First Amendment challenge, the public interest factor is easily met. The Ninth Circuit has consistently recognized the significant public interest in upholding First Amendment principles." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014).

The state responds that "SB 742 imposes minimal restrictions on plaintiffs' expressive activities while serving critical public health purposes during an ongoing pandemic." ECF 12 at 18. The Supreme Court has recognized the importance of vaccines to the health of society. *Id.* A critical public interest in ensuring that people can get vaccines free of harassment weighs against a minimal restriction on Plaintiffs' free expression rights.

9

Recognizing the important interests at play on both sides, the vindication of constitutional rights favors pre-enforcement relief. Therefore, Plaintiffs' Motion for a Temporary Restraining Order is GRANTED.

**IV.    REMEDY/SEVERABILITY**

Having concluded that a Temporary Restraining Order is warranted, the Court considers the appropriate scope of the order. Performing severability analysis, the Court applies California law. *Vivid Entertainment, LCC v. Fielding*, 774 F.3d 566, 574 (9th Cir. 2014). Under California law, courts look to three criteria to determine whether a provision is severable. *Id.* A severable provision "'must be grammatically, functionally, and volitionally separable.'" *Id.* (citation omitted). A provision is grammatically separable if "the invalid parts can be removed as a whole without affecting the wording or coherence of what remains." *Id.* at 576 (citation omitted). It is functionally separable if "the remainder of the statute is complete in itself." *Id.* (citation omitted). And it is volitionally separable if the remainder "would have been adopted by the legislative body had the [body] foreseen the partial invalidation of the statute." *Id.* (citation omitted). The existence of a severability clause creates a presumption of severability. *Id.*

Defendants suggest that, if anything, the Court should enjoin only the portion of the statute that has been specifically challenged by Plaintiffs, namely the prohibition on "knowingly approaching a person or occupied vehicle for the purpose of peaceful oral counseling or education." ECF 12 at 20. Defendants suggest that the Court can accomplish this by enjoining the harassment portion of SB 742, also pointing out the severability clause in the legislation. ECF 12 at 15. This is the same approach that the Eastern District took. *Right to Life*, WL 5040426, at *15-16.

This Court concludes that while the harassment section is grammatically and volitionally severable, it is not functionally severable. As a result, where the Eastern District would enjoin only the harassment portion of SB 742, this Court enjoins the law in its entirety.

In analyzing the appropriate scope of the order, the Eastern District found that the

plaintiff there had not sufficiently supported its request for an injunction of the entire law "including its prohibitions on obstructing, injuring, intimidating or interfering; none of which are challenged by plaintiff." *Id.* at *26.

Given the seriousness of the public health emergency in which California finds itself, this more limited approach to relief has much to recommend it. Plaintiffs here acknowledge that striking the word harassment, as well as its definition, would go a long way towards remedying the harm done by SB 742. ECF 14 at 9. Also weighing strongly in favor of severability is the presence of a severability clause in the legislation. *See, e.g., Barr v. American Ass'n. of Political Consultants*, 140 S. Ct. 2335, 2349 (2020) (noting that where Congress has enacted a severability clause, courts should adhere to it in the absence of "extraordinary circumstances."). But this Court differs with the Eastern District in its understanding of Plaintiffs' argument and in its understanding of exactly what SB 742 prohibits.

First, this Court does understand Plaintiffs to be challenging the entire law, not just the subsection related to harassment. Second, the Eastern District refers to SB 742's "prohibitions on obstructing, injuring, intimidating or interfering." *Right to Life*, WL 5040426, at *15. But SB 742, as that court acknowledges elsewhere in its order, does not prohibit those acts themselves, instead it prohibits approaching with the purpose of doing those things within the buffer zone. As described above, there is no doubt that California could, and in many cases does, prohibit obstructing, injuring, intimidating, or interfering, and subjecting people to criminal penalties for those acts, whether at a vaccination cite or elsewhere. What SB 742 prohibits is approaching within 30 feet with the purpose of doing those things within 100 feet of any vaccination site.

This language raises a very real risk that speech will necessarily be chilled in the course of enforcement of this law, even in the absence of the overbroad harassment section. It is not at all clear how a given law enforcement official is supposed to determine, possibly from a significant distance, whether someone is approaching with the lawful purposes of educating or leafleting, as opposed to the unlawful purpose of

11

intimidating or interfering.  *See Garcia v. City of Los Angeles*, 11 F.4th 1113, 1123 (9th Cir. 2021) ("we must consider whether [the unconstitutional provisions] are necessary to the Provision's operation and purpose such that their absence would affect its enforcement and effectiveness as a practical matter as well as in the abstract.").

The Court finds the Ninth Circuit's analysis in *Acosta v. City of Costa Mesa* instructive here.  718 F.3d 800, 806 (9th Cir. 2013).  There, a plaintiff challenged a city ordinance making it a misdemeanor for members of the public who speak at City Council meetings to engage in "disorderly, insolent, or disruptive behavior.  *Id.*  The Ninth Circuit found the statute facially invalid because it failed to limit its prohibitions to actually disruptive behavior, enjoining some behavior that was merely rude. *Id.* at 807.  The Ninth Circuit further concluded that merely excising the word 'insolent' from the ordinance would not save it because the Chief of Police testified that they relied on that provision in enforcing the ordinance. *Id.* at 821.  As a result, the Ninth Circuit found that it was not functionally severable from the rest of the ordinance. *Id.*  Importantly, this was the case even though the challenged ordinance in *Acosta* did include an explicit severability provision, just like in the present case. *Id.* at 817.

To be sure, the record here is less well developed than in *Acosta* as to how SB 742 is currently being enforced, and the extent of the law enforcement reliance on the unconstitutional harassment provision.  But it stands to reason that the only meaningful way of ensuring that people do not approach each other with proscribed intents is to limit even lawful engagement.  Even with harassment stricken, localities will need to maintain a buffer zone around vaccination sites to ensure that people are complying with the remaining provisions.  The result of this could well be that protest will be discouraged within the zone, at the risk of criminal penalties. *See Harris*, 772 F.3d at 577-78 ("The concern that an overbroad statute deters protected speech is especially strong where, as here, the statute imposes criminal sanctions.") (internal citations omitted).

Mindful of the weighty issues at play on both sides, the Court concludes that SB 742 must be enjoined in its entirety to protect the First Amendment interests of Plaintiffs

12

and the public.

## V. CONCLUSION

1. Plaintiffs' motion for a temporary restraining order, ECF 3, is GRANTED. The Court orders that, pending a hearing on a motion for a preliminary injunction, Defendant and any person acting in concert with him shall be restrained and enjoined from enforcing California Penal Code § 594.39, as applied to Plaintiffs and their agents, as well as to any speaker who would be covered by that provision.

2. No bond shall be required to be posted by Plaintiffs pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

3. The parties are directed to meet and confer and, if possible, submit a joint proposed briefing schedule and hearing date with respect to any motion for a preliminary injunction, with that proposed schedule being submitted to the Court no later than 14 days from the date of this order.

**IT IS SO ORDERED.**

Dated: December 23, 2021

_____
NATHANAEL M. COUSINS
United States Magistrate Judge