Michael Millen
Attorney at Law  (#151731)
119 Calle Marguerita  Ste. 100
Los Gatos, CA  95032
Telephone:  (408) 871-2777
Fax:  (408) 866-7480
mikemillen@aol.com


Catherine Short, Esq. (#117442)
Life Legal Defense Foundation
PO Box 1313
Ojai, CA 93024
(707) 337-6880
kshort@lldf.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (San Jose Division)

| | |
|---|---|
| TERESITA AUBIN, DAVID BROWNFIELD, and WYNETTE SILLS,<br><br>Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his capacity as Attorney General of the State of California,<br><br>Defendant. | NO.:  21-cv-07938-NC<br><br>**NOTICE OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNTATIVE, PRELIMINARY INJUNCTION; MEMO OF POINTS AND AUTHORITIES**<br><br>Date:  April 27, 2022<br>Time: 1:00 p.m.<br>Courtroom #5<br>Judge:  Nathanael Cousins |

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY PRELIM. INJUNCTION, MEMO**          21-cv-07938-NC

TO THE ABOVE-NAMED DEFENDANT:

Please take notice that on April 27, 2022, at 1:00 p.m. or as soon thereafter as the matter can be heard in Courtroom #5 of the United States District Court located at 280 S. First St., San Jose, CA, plaintiffs will, and hereby do, move this court for FRCP Rule 56(d) Summary Judgment on the complaint and all causes of action as against defendant Rob Bonta. The relief plaintiffs are seeking includes, but is not limited to, a declaration stating that SB 742 is unconstitutional on its face and as applied as well as a permanent injunction stating "Defendant Rob Bonta and any person acting in concert with him shall be restrained and enjoined from enforcing California Penal Code §594.39."

Please take further notice that, should the court decline to grant plaintiffs' motion for summary judgment, plaintiffs will alternatively move the court to enter a preliminary injunction preventing defendant Rob Bonta and any person acting in concert with him from enforcing California Penal Code §594.39.

PLEASE TAKE FURTHER NOTICE that the court will decide this motion based upon this notice and the incorporated points and authorities, the declarations of Teresita Aubin, David Brownfield, and Wynette Sills, the Request for Judicial Notice, any other papers filed by plaintiffs between now and the hearing, the complete file and records of this action, and such other oral and documentary evidence which the court allows for presentation at the time of hearing.

Dated: February 8, 2022

_____
MICHAEL MILLEN, ESQ.
ATTORNEY FOR PLAINTIFFS

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY
PRELIM. INJUNCTION;  MEMO**                                Page 1

1

*MEMORANDUM OF POINTS AND AUTHORITIES*

2

**INTRODUCTION**

3

On October 8, 2021, California enacted Senate Bill 742 ("SB 742"), creating Penal Code

4

§594.39 ("Statute"). The Statute imposes various restrictions on First Amendment activity within

5

100 feet of the entrance to any "vaccination site," which is defined to include any space or site

6

where vaccines are provided, including hospitals, physician's offices, clinics, and any retail space

7

or pop-up location.  The heart of the law is a restriction on approaching within 30 feet of another

8

person for the purpose of engaging in various forms of traditional sidewalk free speech. The law

9

also prohibits approaching within 30 feet of individuals entering and leaving "vaccination sites" for

10

the purpose of obstructing or threatening them, thus placing law enforcement in the position of

11

determining someone's intent in making an approach, and prosecuting accordingly, rather than

12

punishing the illegal conduct itself. Finally, SB742 exempts speech activity related to labor

13

disputes, a content-based distinction.

14

SB742 is an unconstitutional restriction on free speech in a public forum and should be

15

permanently enjoined in its entirety.

16

17

**FACTS**

18

On or about September 8, 2021, the Legislature passed Senate Bill 742, creating Penal Code

19

§594.39. On October 8, 2021, the Governor signed the bill. Because the bill was passed as an

20

"urgency statute" that is "necessary for the immediate preservation of the public peace, health or

21

safety," it took effect immediate upon signing. *See* Request for Judicial Notice, Exhibit A (text of

22

Senate Bill 742) and Exhibit B (legislative procedural history of Senate Bill 742).

23

The Statute prohibits approaching withing 30 feet of any person or vehicle while that

24

person or vehicle is within 100 feet of the entrance or exit of a "vaccination site" (that is any

25

location where vaccination services are provided), for the purpose of "obstructing, injuring,

26

harassing, intimidating, or interfering with" persons or vehicles entering or leaving the site.

27

The Statute defines "harassing" to include a swath of constitutionally protected activity,

28

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY
PRELIM. INJUNCTION;  MEMO**

21-cv-07938-NC     Page 1

1   including "knowingly approaching, without consent, within 30 feet of another person or

2   occupied vehicle for the purpose of passing a leaflet or handbill to, displaying a sign to, or

3   engaging in oral protest, education, or counseling with, that other person in a public way or

4   on a sidewalk area." Penal Code §549.39(a) and (c)(1).

5        Plaintiffs are individuals who regularly exercise their free speech rights on sidewalks and

6   public thoroughfares in front of businesses where vaccines are provided.  Declaration of Teresita

7   Aubin ("Aubin Decl."), ¶¶2-3; Declaration of David Brownfield ("Brownfield Decl.") ¶¶2-3;

8   Declaration of Wynette Sills ("Sills Dec.") ¶ 2-3. These plaintiffs seek to approach persons seeking

9   entry into these "vaccination site" clinics to speak with them, display signs, and/or to hand them

10  some literature, but they were chilled from doing so because of the threat of the Statute. Aubin

11  Decl. ¶ 4-5; Brownfield Decl. ¶4-5; Sills Decl. ¶4-6.

12       Since the legislative introduction of SB742 in February 2021, COVID vaccination sites

13  have proliferated. Most pharmacies, supermarkets, big box stores and community centers, as well

14  as hospitals, clinics, doctors' offices, and even airports, offer the COVID vaccine and are thus

15  "vaccination sites" as defined in the statute. RJN ¶¶4-5 and Exhibit C (map of 50 vaccination sites

16  within five miles of the 95113 zip code of the San Jose federal courthouse). As of the date of this

17  filing, over 70 million doses of the COVID vaccine have been administered in California. RJN ¶¶6-

18  7 and Exhibit D.

19

20                          **LEGAL STANDARD**

21       Federal Rule of Civil Procedure 65 states: "The court shall grant summary judgment if

22  the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

23  to judgment as a matter of law. The moving party bears the initial burden of demonstrating the

24  absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

25  Once the moving party has met that burden, including identifying portions of the record that show

26  the absence of a genuine issue of material fact, the burden shifts to the person opposing the motion

27  to controvert that showing "with specific facts showing that there is a genuine issue for trial."

28

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY
PRELIM. INJUNCTION;  MEMO**                     21-cv-07938-NC       Page 2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## ARGUMENT

I. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FIRST AND SECOND CLAIMS.

### A. Penal Code §594.39 is an unconstitutional restriction on speech in a public forum.

Public sidewalks are traditional public fora which for "'time out of mind' . . . have been used for public assembly and debate." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988). The identification of public sidewalks with public fora is not merely the "accidental invocation of a 'cliche.'" *Id*. Rather, the Supreme Court has explicitly held that all sidewalks are public fora: "No particularized inquiry into the precise nature of a specific street is necessary; all public streets are held in the public trust and are properly considered traditional public fora." *Id*. at 481.

Governmental bodies may regulate the time, place and manner of speech in traditional public fora, but only if such regulations "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Again, the government bears the burden of proving that the "narrowly tailored" and "alternative communication" prongs are satisfied. *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1227 (9th Cir. 1990).

A content-based restriction on speech "must be narrowly tailored to promote a compelling Government interest. **If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative**." *United States v. Playboy Entm't Group*, 529 U.S. 803, 813 (2000); *Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 958 (9th 2009) (emphasis added).

<u>1. The Statute is content-based.</u>

Section 594.39(d) expressly exempts "lawful picketing arising out of a labor dispute, as provided in Section 527.3 of the Code of Civil Procedure." Laws that exempt labor picketing are content-based restrictions on speech. *Carey v. Brown*, 447 U.S. 455, 471 (1980) (striking down residential picketing ordinance containing an exception for labor picketing); *Police Department of Chicago v. Mosely*, 408 U.S. 92, 100-102 (1972) (striking down ordinance banning picketing of schools, with an exception for labor picketing). Thus, the Statute must be enjoined unless it serves a compelling governmental interest and there is no less restrictive alternative.

The Findings and Declarations section of SB742 states that the State has an "overwhelming and compelling interest in ensuring its residents can obtain and access vaccinations." RJN Ex. A, p. 2, Section 1(a)(9).

Nothing in the Findings and Declarations suggest why labor picketers are less likely to spread COVID or other airborne diseases to persons outside vaccination sites than are picketers on other topics. Thus, even if the purported state interest were a compelling one, the restriction would be fatally underinclusive. *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 802 (2011) ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint").

Defendant Bonta has argued that the exemption for labor picketing is merely a "clarification" that the statute does not criminalize *stationary* "picketing" of any kind. ECF 12 at 6-7. This Court previously found this argument unpersuasive and concluded that "the statute is not content-neutral as it permits labor picketers to engage in activity that would be illegal if conducted by other parties." ECF 28 at 6. *See also* ECF 14 (Plaintiffs' Reply in Support of Temporary Restraining Order at 2-3)[1].

_____

[1] An additional reason why the Attorney General's argument is untenable is that in an earlier version of SB742 that prohibited "picketing targeted at a vaccination site," the term "picketing" was defined as "as protest activities engaged in by a person within 300 feet of a vaccination site." RJN ¶8 and Exhibit E. Thus, when the Legislature used the word "picketing" in the March 4, 2021, version of the bill, it explicitly meant all "protest activities," not the extremely narrow activity described by the Attorney General.

1    This Court also found the statute was not truly content-neutral, because although it was

2    facially neutral, "there is no doubt that this legislation was adopted in part because of concern

3    about anti-vaccine speech specifically." ECF 28 at 6.

4        Finally, the Statute is also content-based and underinclusive because of its banning **only**

5    those approaches made for the purposes of "oral protest, education, or counseling," as opposed to

6    approaching for any other reason, such as asking directions or panhandling. No compelling

7    governmental interest supports this distinction. *Reed v. Town of Gilbert*, 576 U.S. 155, 172 (2015)

8    ("The Town has offered no reason to believe that directional signs pose a greater threat to safety

9    than do ideological or political signs.") Although the Supreme Court in *Hill v. Colorado*, 530 U.S.

10   703 (2000), held that a similar provision in a Colorado law was content-neutral, subsequent

11   Supreme Court case law has undercut that analysis. See *Price v. City of Chicago*, 915 F.3d 1107,

12   1117 (7th Cir. 2019):

13

14       *Hill* is incompatible with current First Amendment doctrine as explained in
         *Reed* [*v. Gilbert*, 576 U.S. 155 (2015)] and *McCullen*. To begin, *Hill* started

15       from the premise that "[t]he principal inquiry in determining content neutrality
         ... is whether the government has adopted a regulation of speech because of

16       disagreement with the message it conveys." 530 U.S. at 719 . . . After *Reed*
         that's no longer correct. We now know that the first step in the content-

17       neutrality inquiry is to ask whether the challenged law is "content based on its
         face."

18
     A law that permits an approach to ask for directions or money but prohibits the exact same
19
     approach to say, "Can I help you?" or "Don't shop here," is clearly content-based on its face.
20
     *Id.* at 1118.
21
         Section 594.39 is a content-based restriction on speech.
22
             <u>2. The Attorney General Cannot Meet His Burden of Showing that the
23           Statute Serves A Compelling Government Interest.</u>

24       For purposes of ruling on plaintiffs' application for a temporary restraining order, this

25   Court found that "ensuring safe access to vaccines for those who wish to have one is [] a

26   compelling state interest". ECF 28 at 7. However, while it is true that 17 months ago the

27   Supreme Court stated that "[s]temming the tide of COVID-19 is unquestionably a compelling

28

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY
PRELIM. INJUNCTION;  MEMO**          21-cv-07938-NC      Page 5

state interest." *Roman Catholic Dioceses of Brooklyn v. Cuomo*, 529 U.S. __, 141 S.Ct. 63, 67 (2020), the extremely low hospitalization and death rates of the variants of COVID-19 prevalent in 2022 (such as "Omicron") put the burden on the Attorney General to prove this statement remains true in these radically changed conditions.

Compelling state interests are interests of the highest order, and as such, can trump even core First Amendment rights such as free speech and religious freedom.  Accordingly, designation of a government interest as "compelling" should happen only rarely, and not merely as a synonym for "very important."

Moreover, interests considered "compelling" during an emergency (e.g., a time of war or insurrection) cannot maintain that status indefinitely, after the emergency has passed, or if other circumstances change. While eight months into the COVID pandemic the Supreme Court thought it obvious that stemming the spread of COVID was a compelling state interest, "this interest cannot qualify as such forever." *Doe v. Mills*, ___U.S.__, 142 S.Ct. 17, 21 (2021) (Gorsuch , J. dissenting)  ("Back when we decided *Roman Catholic Diocese*, there were no widely distributed vaccines. Today there are three. At that time, the country had comparably few treatments for those suffering with the disease. Today we have additional treatments and more appear near. If human nature and history teach anything, it is that civil liberties face grave risks when governments proclaim indefinite states of emergency.")

Here, the State asserts a narrower interest than stemming the spread of COVID: "ensuring its residents can obtain and access vaccinations."  Still other circumstances can and have worked against the "compelling" nature of this interest, namely the universal availability of vaccines and the lack of any actual threats to access.[2]  Seventy percent of eligible Californians are fully vaccinated. The Attorney General must adduce evidence that access to vaccines is realistically threatened or hindered. Without such evidence, ensuring

---

[2] Other circumstances could also undercut the compelling nature of the state's asserted interest. For example, there would unquestionably be no compelling interest in ensuring access to COVID-19 vaccines that were no longer effective against the current variant of the virus.

access to COVID vaccines is no more a compelling governmental interest than ensuring access to kidney dialysis facilities, weight loss centers, or "bicycle and motorcycle helmet purchase sites."[3]

However, this Court need not decide whether the state's asserted interest is compelling or not, because the Statute clearly fails the second prong of strict scrutiny.

### 3. The Statute Is the Not Least Restrictive Means to Achieve the State's Asserted Compelling Interest

Even if the State's interest in ensuring safe access to vaccines were a compelling interest, the Statute is not narrowly drawn to achieve that interest; it cannot survive the intermediate scrutiny applicable to content-neutral restrictions on speech, much less the strict scrutiny applied to content-based restrictions on speech.

The Statute bans approaches of **any person** seeking entry for **any reason** to **any location** where **any vaccine** is provided. Creating approach-free zones around every drug store, health clinic, doctor's office, and supermarket in the state (see RJN ¶¶4-5 and Exh. C) in order to prevent the occasional customer seeking a vaccine from being approached and offered a pamphlet is hardly a narrowly drawn restriction on speech. On the contrary, it is unconstitutionally overinclusive and overbroad. *Brown, supra* 564 U.S. at 804 (striking down ban on violent video games as both underinclusive and overinclusive: "While some of the legislation's effect may indeed be in support of what some parents of the restricted children actually want, its entire effect is only in support of what the State thinks parents *ought* to want.") (Original emphasis.)

---

[3] Another problem with an unqualified declaration that ensuring access (regardless of changed circumstances) to all COVID-19 vaccines is a compelling governmental interest is that such a finding could inadvertently invite the Legislature to pass new, narrowly drawn laws directly targeting particular content. For example, the Legislature could pass a law prohibiting approaching within 8 feet of people seeking vaccines for the purpose of communicating about vaccines. While such a law would not affect these Plaintiffs, it would undermine the principle that "above all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Mosely*, supra, 408 U.S. at 95. For this reason, compelling government interests should be narrowly defined in time, space, and content lest imprecision invite overextended regulation.

1    As this Court noted, the Attorney General "does not dispute that SB 742 would not survive

2  strict scrutiny, arguing instead that it survives *intermediate* scrutiny as a content-neutral time,

3  place, and manner restriction."  ECF 28 at 7 (original emphasis).  Moreover, as this Court also

4  noted, the Attorney General's reliance on *Hill v. Colorado*, 530 U.S. 703 (2000), which applied

5  intermediate scrutiny, is misplaced not simply because of the level of scrutiny applied but because

6  the law itself "differs from the statute upheld by the Supreme Court." *Id*. The Statute imposes a 30-

7  foot no-approach zone, rather than the 8-foot zone approved in *Hill*; it is not narrowly tailored with

8  respect to the locations affected; and it "is not narrowly tailored with respect to the people it shields

9  from speech." *Id.* at 8.

10    More recently than *Hill*, the Supreme Court struck down a Massachusetts law creating 35-

11  foot speech-free buffer zones around the entrances to abortion clinics. *McCullen v. Coakley*, 573

12  U.S. 464 (2014). Applying intermediate scrutiny, the Court held that the law was not narrowly

13  tailored and infringed on the core First Amendment activities of one-on-one conversation and

14  leafleting. *Id.* at 489-90.

15    The Court also noted that Massachusetts had failed to explain why its interests could not be

16  protected and furthered by less drastic restrictions on speech, including simply enforcing existing

17  criminal laws against "assault, breach of the peace, trespass, vandalism, and the like." *Id.* at 492.

18  Repeat offenders could be enjoined in civil actions. *Id*. "The point is [] that the Commonwealth has

19  available to it a variety of approaches that appear capable of serving its interests, without excluding

20  individuals from areas historically open for speech and debate." *Id*. at 493-94.[4]

21    Similarly in the instant case, as the Court here noted: "The state could achieve the same

22  purpose simply by enforcing existing laws against intimidation, *see, e.g.*, Cal. Penal Code § 422

23

24  _____

25  [4] At the outset of its discussion of narrow tailoring, the Court noted that the buffer zone law
was "truly exceptional." The parties "identify no other State" with a similar speech-restrictive

26  law. The unique nature of the law raised "concern that the Commonwealth has too readily
forgone options that could serve its interests just as well, without substantially burdening the

27  kind of speech in which petitioners wish to engage." *McCullen*, 573 U.S.at 490*.* Plaintiffs
here are unaware of any state or local law in the United States restricting speech specifically

28  in the vicinity of vaccination sites.

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY
PRELIM. INJUNCTION;  MEMO**

21-cv-07938-NC   Page 8

1    (Criminal Threats), or obstruction of movement. See, e.g., Cal. Penal Code § 602.1 (Interfering Or

2    Obstructing A Public Business Establishment)." ECF 28 at 8. The Statute is indisputably not the

3    least restrictive means of furthering its asserted interest in ensuring safe access to vaccines.

4            The Court in *McCullen* also found the Commonwealth's record of prior disruptive conduct

5    purportedly justifying the buffer zones to be woefully deficient, as was the Commonwealth's record

6    of having tried, without success, other means of addressing the problems that threatened its

7    interests. Even under intermediate scrutiny, "To meet the requirement of narrow tailoring, **the**

8    **government must demonstrate** that alternative measures that burden substantially less speech

9    would fail to achieve the government's interests, not simply that the chosen route is easier." *Id*. at

10   495 (emphasis added).

11           The burden on the government is even higher with content-based restrictions on speech:

12           "[W]hen the plaintiff offers a plausible, less restrictive alternative to a content-based
         speech restriction, it is the Government's obligation to prove that the alternative

13       will be ineffective to achieve its goals. To meet this burden, the state must provide more
         than anecdote and supposition; it must point to evidence in the legislative record or

14       present other evidence that demonstrates why the challenged restriction, rather than a
         less restrictive alternative, is necessary to further its significant interests."

15

16   *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019) (simplified).

17           The Findings and Declarations of SB742 contain only one sentence setting out the

18   perceived need for this law: "Protestors at vaccination sites continue to impede and delay

19   Californians' ability to access vaccination sites."  RJN Ex. A, Section 1(a)(12). To establish that

20   the Statute satisfies strict scrutiny, the Attorney General would have to show that this problem has

21   been substantial; that it continues; that the government has tried other means of addressing the

22   problem, without success; **and** thus the Statute is the least restrictive means of furthering its

23   interests. It cannot do so.

24           The undisputed material facts demonstrate that SB742 is an unconstitutional restriction on

25   speech in a public forum, and summary judgment should be entered for plaintiffs.

26

27

28

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY          21-cv-07938-NC        Page 9
PRELIM. INJUNCTION;  MEMO**

II. ALTERNATIVELY, THIS COURT SHOULD ISSUE A PRELIMINARY INJUNCTION
     STAYING ENFORCEMENT OF THE STATUTE IN ITS ENTIRETY PENDING A TRIAL
     ON THE MERITS.

Should this Court deny Plaintiffs' motion for summary judgment, Plaintiffs move in the alternative for a preliminary injunction during the pendency of the action.

To be granted a preliminary injunction, the moving party "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 20 (2008). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011).

This Court has already determined that Plaintiffs have demonstrated the likelihood of success on the merits. ECF 28. The merits of Plaintiffs' challenge are also amply covered in Section I, *supra*.

As to irreparable harm, this Court noted, and Defendants have not disputed, that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). ECF 28 at 9.

As to the two remaining factors, "[w]hen the government is a party, those two inquiries merge. *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134, 1141 (9th Cir. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014))." ECF 28 at 9. This Court has already balanced the public interests and correctly determined that preliminary injunctive relief was appropriate. *Id*. Nothing has happened in the intervening period to disturb the Court's determination on those factors.

Moreover, as Plaintiffs noted over four months ago, this "urgency" legislation languished in the Legislature for seven months before finally being passed in the final hours of the legislative session. ECF 3-1, at 8. Another month passed before the Governor signed it. It

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY
PRELIM. INJUNCTION;  MEMO**                     21-cv-07938-NC     Page 10

1  addresses a problem regarding physical interference with access to vaccinations that, *if it ever*

2  *existed*, exists no more.

3      III.    THE COURT SHOULD WAIVE BOND

4

5      If the court enters a preliminary injunction, the court is asked to waive bond under

   F.R.Civ.P. Rule 65(c), as it did in issuing the temporary restraining order.

6                          **CONCLUSION**

7      There are no material facts in dispute and Plaintiffs have demonstrated that they are entitled

8  to judgment as a matter of law. This Court should grant Plaintiffs' Motion for Summary Judgment,

9  and enter a permanent injunction against SB742 in its entirety. Alternatively, the Court should enter

10 a preliminary injunction in the same terms as the temporary restraining order, pendente lite.

11

12

13 Dated: February 8, 2022

14                                      _____

15                                      MICHAEL MILLEN, ESQ.
                                        ATTORNEY FOR PLAINTIFFS
16

17                                      LIFE LEGAL DEFENSE FOUNDATION

18

19 Dated: February 8, 2022

20                                      /S/_____

21                                      CATHERINE SHORT, ESQ.
                                        ATTORNEY FOR PLAINTIFFS
22

23

24

25

26

27

28

Michael Millen, Esq.
119 Calle Marguerita #100
Los Gatos, CA 95032
(408) 871-0777

**PLAINTIFF'S MOTION FOR MSJ OR ALTERNATIVELY**          21-cv-07938-NC      **Page 11**
**PRELIM. INJUNCTION;  MEMO**